**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DEBBIE EINMO**

       **Plaintiff,**

**v.**                                      **Case No. 8:06-cv-1371-T-27TBM**

**AECOM GOVERNMENT**
**SERVICES, INC., et al.,[1]**

       **Defendants.**
_____/

**<u>REPORT AND RECOMMENDATION</u>**

THIS MATTER is before the court by referral from the Honorable James D. Whittemore for a Report and Recommendation on **Defendant Aecom Government Services, Inc.'s Motion to Dismiss the Amended Complaint** (Doc. 12). By its motion, Defendant Aecom Government Services, Inc. ("AGS"), seeks an order dismissing the Amended Complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2). It submits affidavits and other document evidence in support of its motion. Plaintiff has filed a response in opposition (Doc. 15). A telephonic hearing was conducted on August 2, 2007.

_____

[1]The other named Defendants are CSA, Ltd., Combat Support Associates, SMI International Corporation, and Research Analysis and Maintenance, Inc. Defendant Research Analysis and Maintenance, Inc., filed its Answer, denying all claims, on February 13, 2007. (Doc. 10). CSA, Ltd., Combat Support Associates, and SMI International Corporation have yet to be served.

I.

The pertinent facts are largely undisputed and are taken from Plaintiff's Amended

Complaint (Doc. 4) and affidavits submitted by Defendant in support of its motion to dismiss

(Doc. 12).[2]  Plaintiff has not submitted counter affidavits or other evidence in opposition.

At pertinent times, Plaintiff was a resident of Winter Haven, Florida.  She is an

accountant by trade and is currently in the Middle East for employment purposes.  (Doc. 4, ¶¶

3, 7).  Defendant AGS is a United States company, incorporated in the state of Delaware, with

its principal place of business in Ft. Worth, Texas.  (Doc. 12-2, ¶ 4).  AGS has no offices,

registered agents, or employees in Florida.  Id., ¶ 5.

In 1998, AGS, along with Defendants Research Analysis and Maintenance, Inc.

("RAM") and SMI International Corporation ("SMI"),[3] formed an unincorporated joint

venture called Combat Support Associates to develop and submit a proposal to the United

States Army to provide combat services support to the Army at Camp Doha, Kuwait, and to

perform the contract if it was awarded to Combat Support Associates.  (Doc. 12-2, ¶ 3).  In

July 1999, Combat Support Associates was awarded the "Combat Services Support Contract -

Kuwait" ("the Contract"), and currently remains the prime contractor to the Army pursuant to

---

[2]Defendant submits the Affidavits of William W. Stirling (Doc. 12-2 at 2), George
Bassut (Doc. 12-3 at 2), and Albert J. Konvicka (Doc. 12-4 at 2), along with other
documentary evidence.

[3]Defendants RAM and SMI are American corporations.  (Doc. 4, ¶ 4).  RAM's
principal place of business is in El Paso, Texas.  (Doc. 12-2, ¶ 4).  According to defense
counsel's representation at hearing, RAM is registered to do business in Florida although its
business in the state has nothing to do with AGS, the joint venture, or Plaintiff.  SMI's
principal place of business is in Colorado.  (Doc. 12 at 3, n.3).

the Contract.  Id.  Combat Support Associates does not have offices or registered agents in Florida.  Id., ¶ 5.

In September of 1999, Combat Support Associates formed a Cayman Islands corporation called CSA, Ltd.[4]  Combat Support Associates subcontracted a substantial portion of the non-classified work under the Contract to CSA, Ltd.  Thus, CSA, Ltd. is responsible for the employment-related decisions pertaining to employees who perform non-classified duties under the Contract, and it is the primary subcontractor to Combat Support Associates under the Contract.  (Doc. 12-2, ¶ 6).  As a non-domestic company, CSA, Ltd., cannot employ persons whose work provides, or may provide, access to classified information.  Id., ¶¶ 8-9.  As such, persons employed to perform classified or non-classified job duties with Combat Support Services and non-classified job duties with CSA, Ltd., are employed under an employment agreement for unclassified work with CSA, Ltd., and an employment agreement for classified work with Combat Support Associates.  These employees are referred to as "dual status" employees.  Id., ¶¶ 9-10.

AGS provides recruiting services for CSA, Ltd., essentially performing a "head hunter" function.  When CSA, Ltd., identifies open positions, AGS sources candidates for the positions.  Id., ¶ 11.  George Bassut is the recruiting manager for AGS and performs much of the work, including the initial interview, when senior-level positions are involved.  (Doc. 12-3, ¶¶ 1, 3).  AGS initially attempts to source applicants through established employment networks, corporate postings, and existing job boards.  If AGS is unable to obtain qualified

---

[4]CSA, Ltd., is an offshore company that is not registered to do business in the United States.  It performs no business activities in the United States.  (Doc. 12-2, ¶ 7).

applicants through those outlets, it obtains approval from CSA, Ltd., to use classified job advertisements in strategically selected newspapers.  All applicants are requested to forward their resumes via email to Bassut, or via facsimile to the AGS recruiting department.  (Doc. 12-3, ¶ 5).  If a senior level applicant's resume meets the job qualifications, AGS contacts the candidate for an initial interview and screening by telephone.  For positions involving finance, AGS also checks the applicant's credit history.  Id., ¶ 6.  After candidates have been screened and interviewed, AGS submits recommendations to CSA, Ltd.'s senior management for final determination as to hiring.  AGS is not involved in the final hiring determination. Id., ¶ 7.

In late 2003, CSA, Ltd., informed AGS that it needed to hire a new business manager in Kuwait.  AGS's recruiting department placed a job posting in the Houston Chronicle Newspaper, which included the newspaper's online web site.  Because the posting was for a senior level position, Bassut performed most of the recruiting functions, including email and telephone communications with the candidates.  (Doc. 12-3, ¶ 8).

On January 21, 2004, Bassut received an email response from the Plaintiff expressing interest in the position.  Plaintiff's resume was attached to the email and she provided a cell phone number where she could be contacted.[5]  (Doc. 12-3, ¶ 9).  Bassut contacted Plaintiff a few days later using the cell phone number she provided in her email.  After several conversations with Plaintiff, Bassut forwarded her resume to Dennis Deslatte, the controller for AGS's immediate parent company.  Deslatte may have telephoned Plaintiff to discuss her

_____

[5]Bassut does not know where Plaintiff was physically located when she accessed the Houston Chronicle's web page or when she emailed her resume.  (Doc. 12-3, ¶ 9).

4

resume.  Bassut also emailed Plaintiff an employment application, an authorization to conduct a background check and obtain a credit report, and additional information about the Contract and the culture in Kuwait.  He asked Plaintiff to complete the employment forms and return them to him via facsimile so that he could begin the background checks while she progressed through the interviewing and screening process.  (Doc. 12-3, ¶ 11).

On January 27, 2004, Plaintiff faxed the background check authorization form and one page of her employment application to Bassut's office in Ft. Worth, Texas.  The informational fax header on the documents revealed they were faxed from an Atlanta, Georgia, fax number.  (Doc. 12-3, ¶ 12).  That same day, Bassut contacted Plaintiff either via email or cell phone to inform her that he did not receive the complete employment application.  Plaintiff re-faxed the authorization form and the entire application form to Bassut the next day.  According to the informational fax header, Plaintiff faxed the documents from a Houston, Texas, fax number.  Id.. ¶ 13,

On January 29, 2004, Bassut checked the references listed on Plaintiff's application.  In doing so, he telephoned Sam Merchant, the owner of Faro Technology in Lake Mary, Florida, and Kelly Moury, the President of Gull Industry in Houston, Texas.  (Doc. 12-3, ¶ 14).

On February 1, 2004, CSA, Ltd., flew Plaintiff from Houston to Dallas/Ft. Worth for an interview for the business manager position.  Bassut interviewed Plaintiff.  Thereafter, he recommended to CSA, Ltd., that Plaintiff be considered for the position.  CSA, Ltd., verbally extended Plaintiff a conditional offer of employment as the business manager provided that

her background checks and other security paperwork was successfully processed.  (Doc. 12-3, ¶ 15).

On February 5, 2004, Plaintiff emailed Bassut an electronic version of the cover letter that she had sent him via UPS, as well as receipts for expense reimbursement related to her interview.  She also informed Bassut that she would be leaving for a one-week trip to Montana on February 6, 2004, and would return to Houston on February 13, 3004, for a few days before returning to her home in Florida.  (Doc. 12-3, ¶ 16).

On February 7, 2004, CSA, Ltd., extended a written conditional offer of employment to Plaintiff via email for the position of business manager for CSA, Ltd. - Kuwait.  CSA, Ltd., also emailed Plaintiff a sample employment agreement for review, and informed her that the actual employment agreement would be executed when she reached Kuwait.  (Doc. 12-2, ¶ 18).

On February 9, 2004, Plaintiff faxed CSA, Ltd., her acceptance of the conditional offer of employment and other employment forms.  The fax header on these forms indicated Plaintiff faxed the documents from Wyoming.  (Doc. 12-2, ¶ 19).

During this same period, William W. Stirling, the general manager for Combat Support Associates in Kuwait, also had contact with Plaintiff.  He placed one or two telephone calls to Plaintiff's cell phone to discuss the position and departure process, and he had email contact with her regarding the same.  (Doc. 12-2, ¶¶ 1, 14).  On February 6, 2004, Plaintiff emailed Stirling for information about her departure date for Kuwait.  Between that date and February 14, 2004, Stirling and Plaintiff exchanged emails discussing her departure date and location.  On February 12, 2004, Plaintiff emailed Stirling that she was in Montana.

In that same email exchange, Plaintiff told Stirling that she had returned to Texas as of February 14, 2004, and she was going to her home in Florida on February 16, 2004. Thereafter, Plaintiff was traveling to Durham, North Carolina, to visit her son from February 20th through the 23rd.  (Doc. 12-2, ¶¶ 15-16).

On February 17, 2004, Steve Jones, a financial consultant to AGS, telephoned Plaintiff at AGS's request to discuss matters revealed in her credit report.  On February 19, 2004, Jones drafted a memo detailing the due diligence he conducted with respect to the issues with Plaintiff's credit report and recommending that the issues would not prevent Plaintiff from performing her duties as business manager.  (Doc. 12-3, ¶ 17).

On February 25, 2004, Plaintiff arrived in Kuwait and began working as the business manager for CSA, Ltd. - Kuwait.  At that time, Plaintiff executed a one-year employment agreement for unclassified work with CSA, Ltd.  Because the business manager position was classified as a "dual status" position, Plaintiff also executed a one-year employment agreement with Combat Support Associates.  However, Plaintiff did not have a security clearance, and the majority of her time was spent performing unclassified work as the business manager for CSA, Ltd.(Doc. 12-2, ¶ 21).

Plaintiff filed suit against the Defendants in July 2006.  (Doc. 1).  She filed her Amended Complaint in October 2006.  (Doc. 4).  Plaintiff asserts state law claims against all Defendants for violating Florida's Whistle Blower Act (Count I); Breach of Oral Contract (Count II); Unpaid Wages (Count III); Quantum Meruit (Count IV);Unjust Enrichment

(Count V); and Promissory Estoppel (Count VI).[6]  Plaintiff seeks compensatory and

consequential damages and reasonable attorney fees.  In pertinent part, Plaintiff alleges that

(1) she was recruited and ultimately hired by Defendants from her domicile in Florida, (2) the

employment relationship between herself and Defendants "arose from Florida," and (3) "all

material events occurred overseas . . ."  (Doc. 4, ¶¶ 5, 8).

By its motion and affidavits, AGS urges the court to dismiss the action against it for

lack of personal jurisdiction.  By its argument, Plaintiff is unable to satisfy Florida's long-arm

statute, and even if she could, exercising personal jurisdiction over it does not comport with

due process because AGS did not purposefully establish minimum contacts with the state of

Florida and the facts fall short of those required to satisfy the standards for "fair play and

substantial justice."  (Doc. 12).  In response, Plaintiff contends her allegations of jurisdiction

are sufficient as she has properly alleged that the employment relationship originated in

Florida.  (Doc. 15).

---

[6]By Plaintiff's allegations, during the course of her employment with Defendants she
discovered and objected to improper accounting practices, which she believed amounted to
violations of law, rule and regulations.  As a result of her objections, Plaintiff suffered
adverse employment actions including, but not limited to, Defendants unilaterally changing
the terms and conditions of her employment by assigning her additional work that resulted in
un-contemplated amounts of overtime and her constructive discharge.  (Doc. 4, ¶¶ 10-12).
Defendants ultimately refused to renew her employment contract.  Id. at 13.

II.

A federal court sitting in diversity must undertake a two-part analysis to determine if it may exercise personal jurisdiction[7] over a nonresident defendant.  Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996).  The court must first determine whether the Florida long-arm statute provides a basis for personal jurisdiction.  Sculptchair, 94 F.3d at 626.  If it does, the court must then determine whether sufficient minimum contacts exist between the defendant and Florida so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause to the Fourteenth Amendment.  Id.  Only if both prongs are satisfied may the court exercise personal jurisdiction over the nonresident defendant.  Madara, 916 F.2d at 1514.

To obtain personal jurisdiction over a nonresident defendant, a plaintiff initially need only allege sufficient facts to make out a prima facie case of jurisdiction.  Posner, 178 F.3d at 1214 (citing Electro Eng'g Prods. Co. v. Lewis, 352 So.2d 862, 864 (Fla. 1977)); Response Reward Sys., L.C. v. Meijer, Inc., 189 F. Supp. 2d 1332, 1335 (M.D. Fla. 2002) (citing Powercerv Tech. Corp. v. Ovid Tech., 993 F. Supp. 1467, 1468 (M.D. Fla. 1998)).  Upon that showing, the burden shifts to the defendant to support its jurisdictional challenge with affidavits to show that the long-arm statute is inapplicable.  Response Reward Sys., 189 F.

---

[7]Personal jurisdiction can be either specific or general.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).  General jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation.  Madara v. Hall, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990).  Specific personal jurisdiction arises from a party's contacts within the forum state that are related to the cause of action.  Id.

Supp. 2d at 1335 (citing <u>Structural Panels, Inc. v. Tex. Aluminum Indus., Inc.</u>, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993)).  If the defendant meets this burden, the plaintiff must then affirmatively support her jurisdictional allegations and may not rely upon the factual allegations in the complaint.  <u>Posner</u>, 178 F.3d at 1214 (quoting <u>Venetian Salami Co. v. Parthenais</u>, 554 So. 2d 499, 502 (Fla. 1989)); <u>Response Reward Sys.</u>, 189 F. Supp. 2d at 1335. The court must accept the uncontroverted facts alleged in the complaint as true, and where the parties' affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff.  <u>Cable/Home Commc'n Corp. v. Network Prods.</u>, 902 F.2d 829, 855 (11th Cir. 1990).  If the plaintiff fails to refute the defendant's affidavits with sworn proof to prove jurisdiction, the defendant's motion to dismiss must be granted.  <u>Venetian Salami Co.</u>, 554 So.2d at 502.

A.

In deciding the reach of Florida's long-arm statute, the court is bound to adhere to the decisions of the Florida courts.  <u>Sculptchair</u>, 94 F.3d at 627.  In this regard, Florida's long-arm statute must be strictly construed, and the plaintiff bears the burden of proving facts which satisfy the criteria.  <u>See</u> <u>id.</u>

As a threshold matter, the court must determine whether Plaintiff sufficiently pleads jurisdiction.  Here, the Amended Complaint does not identify a purported basis for the applicability of Florida's long-arm statute to any of the Defendants, and it does not include any particular jurisdictional allegations with respect to Defendant AGS individually.  Rather, Plaintiff addresses Defendants as one, and alleges generally that "the employment relationship between Plaintiff and Defendants arose from Florida," and "Plaintiff was

10

recruited and ultimately hired by Defendants from Plaintiff's domicile in Florida . . ." (Doc. 4, ¶¶ 5, 8).  Each of Plaintiff's six claims relate to her employment relationship with the "Defendants" and allege that all "material events occurred overseas . . ." Id., ¶ 5.  In opposition to AGS's motion to dismiss, Plaintiff contends the court has jurisdiction over AGS under section 48.193 because it engaged in a business venture in Florida by recruiting Plaintiff, presumably for profit.[8]  (Doc. 15, ¶ 8).  Additionally, during the telephonic hearing on the motion, counsel for Plaintiff suggested vaguely that long-arm jurisdiction over AGS existed under general jurisdiction principles, on the basis that AGS knowingly used the internet to conduct its business in Florida and throughout the country.

With respect to specific jurisdiction, the Florida long-arm statute states, in pertinent part, that a person submits himself to the jurisdiction of courts of this state for any cause of action arising from[9] "[o]perating conducting, engaging in, or carrying on a business or business venture in the state or having an office or agency in this state." Fla. Stat. § 48.193(a)(1).  To establish that a non-resident defendant is engaging in business or a business venture in Florida, the court must consider whether a defendant's collective

---

[8]Reading Plaintiff's response (Doc. 15) broadly, it suggests a jurisdictional basis under section 48.193(2) (general jurisdiction). See (Doc. 15, ¶ 5) ("Defendant admits that the employment and recruiting process for senior level positions were routinely conducted via electronic means. . . . Defendant has acknowledged [its] own pattern and practice of advertising positions on a world wide basis via the internet and conducting large portions of the employment and recruiting process via electronic means including the State of Florida.").

[9]The term "arising from," as used in statute subjecting a non-resident defendant to specific jurisdiction in an action arising from business activity in the state, requires direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiff's cause of action and the defendant's business activity in the state. Gadea v. Star Cruises, Ltd., 949 So.2d 1143, 1149-50 (Fla. Dist. Ct. App. 2007).

activities demonstrate a general course of business activity in the state for pecuniary benefit.

Sculptchair, 94 F.3d at 627 (quoting Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So.2d

561, 564 (Fla. 1975)).  Factors relevant, but not dispositive, to this analysis include the

presence and operation of an office in Florida, the possession and maintenance of a license to

do business in Florida, the number of Florida clients served, and the percentage of overall

revenue gleaned from Florida clients.  Horizon Aggressive Growth, L.P. v. Rothstein-Kass,

P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (citations omitted).

      With respect to general jurisdiction, the Florida long-arm statute provides that a

defendant who engages in substantial and not isolated activity within the state is subject to

jurisdiction in Florida whether or not the claims asserted arise from that activity.  Fla. Stat.

§ 48.193(2).  "Substantial and not isolated activity" means "continuous and systematic

general business contact" with Florida.  Rexam Airspray, Inc. v. Arminak, 471 F. Supp. 2d

1292, 1298 (S.D. Fla. 2007); Woods v. Nova Cos. Belize, Ltd., 739 So.2d 617, 620 (Fla. Dist.

Ct. App. 1999); Am. Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1128 (Fla. Dist.

Ct. App. 1994).  This standard is the functional equivalent of the continuous and systematic

contact requirement for general jurisdiction under the Due Process clause of the Fourteenth

Amendment.  Gen. Cigar Holdings, Inc. v. Altadis, S.A, 205 F. Supp. 2d 1335, 1343 (S.D.

Fla. 2002).

      To adequately plead a prima facie showing of jurisdiction, a plaintiff may track the

language of section 48.193 without pleading supporting facts or by alleging specific facts that

demonstrate that the defendant's actions fit within one or more subsections of section 48.193.

Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle, 955 So.2d 598, 601 (Fla. Dist. Ct.

App. 2007).  As an initial matter, I conclude that Plaintiff fails to adequately plead facts to

establish AGS is within the reach of Florida's long-arm statute.

      The Amended Complaint does not track the pertinent statutory language.  Nor does it

allege specific facts demonstrating that jurisdiction over AGS is proper under either section

48.193(1)(a) or 48.193(2).  To the extent that Plaintiff urges the court has specific jurisdiction

over AGS under section 48.193(1)(a) because it engaged in a business venture in the forum

state for profit, the Amended Complaint falls short of alleging specifics facts that demonstrate

such.  Notably missing from the allegations are that AGS has established or operated an office

in Florida, that it is represented by a corporate agent here, that it possesses or maintains a

license to do business in Florida, or that it derives revenue from Florida clients.  Rather,

beyond the broad allegations that the employment relationship between Defendants and

Plaintiff arose from Florida and Defendants recruited and hired Plaintiff from her domicile in

Florida, no specific activities or contacts are alleged.  The broad allegations are insufficient to

demonstrate the causes of actions arose from doing business or engaging in a business venture

in Florida as required by the long-arm statute.  See, e.g., Fasco Controls Corp. v. Goble, 688

So.2d 1029, 1039 (Fla. Dist. Ct. App. 1997).  Likewise, the Amended Complaint does not

contain allegations that AGS engaged in the type of substantial activity necessary to establish

general jurisdiction under Florida law.  To the extent that Plaintiff suggests in her response

that AGS's "recruiting" or "advertising" activities constitute substantial activity, they do not.

Standing alone, such activities are insufficient grounds for the assertion of general

jurisdiction.  See, e.g., Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420 (11th Cir. 1986)

(holding that advertisement in a *forum* newspaper announcing employment opportunities to

be performed outside of forum state did not satisfy the requisites of due process); <u>Prentice v. Prentice Colour, Inc.</u>, 779 F. Supp. 578, 584 (M.D. Fla. 1991) (under section 49.193(2), courts have not "evince[d] any willingness or rationale to find solicitation activities alone sufficient grounds for the assertion of general jurisdiction.").  In any event, the Amended Complaint does not contain any allegations that AGS actively recruits employees or advertises job positions in Florida on a regular basis.

While I conclude that Plaintiff has failed to adequately plead sufficient facts to make out a prima facie case of jurisdiction, even assuming that she has, I find that AGS has supported its jurisdictional challenge with sufficient proof to show that the long-arm statute is inapplicable under either section 48.193(a)(1) or (2).

In this regard, Defendant submits the affidavits of Stirling and Bassut, as well as other documentary evidence, in support of its argument that there is no personal jurisdiction over AGS under section 48.193(1)(a).[10]  By the proffered evidence, AGS does not have an office or agent in Florida, its agents did not travel to Florida to meet with Plaintiff, AGS did not advertise or solicit for the business manager position in Florida, and, while Plaintiff learned about the position with CSA, Ltd., from an advertisement in the Houston Chronicle's online newspaper, there is no evidence that the advertisement was distributed in, or aimed at, Florida.  As Defendant notes, advertisements in trade publications not aimed at Florida are insufficient to establish jurisdiction in Florida, even if some of the advertisements incidentally

_____

[10]Defendant also argues a lack of jurisdiction under other sections of the long-arm statute.  <u>See</u> (Doc. 12 at 11-18) (urging no specific jurisdiction under §§ 48.193(1)(a), (b), (f)(1), and (g)).  However, in light of Plaintiff's response and statements at the hearing, only sections 48.193(a)(1) and (2) of the long-arm statute need be addressed.

end up in Florida.[11]  See Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List

Mgmt., Inc., 726 So.2d 313, 314 (Fla. Dist. Ct. App. 1998).  Contrary to Plaintiff's

contention, the fact that AGS did not proffer that the Houston Chronicle's online newspaper

was merely a trade publication such that the above authority controls is a distinction without a

difference.  Furthermore, contrary to Plaintiff's unsworn assertion, there is no evidence that

Defendant strategically utilized online publications to attract employees from Florida or that it

acknowledged its own pattern and practice of advertising positions on a world wide basis via

the internet.  There is no evidence, by affidavit or otherwise, that AGS's job posting for CSA,

Ltd., ever ended up in Florida.  For these reasons, the fact that AGS placed an employment ad

in the Houston Chronicle, which in turn placed it on its online website, does not satisfy

section 48.193(1)(a).

Next, to the extent Plaintiff attempts to satisfy the long-arm statute by relying on the

fact that the "employment relationship between Plaintiff and Defendants arose from Florida,"

Plaintiff's employment relationship was with CSA, Ltd., not with AGS.  Additionally, the

formal employment agreements or contracts were established in Kuwait, not in Florida.  Even

assuming that the initial negotiations and Plaintiff's conditional acceptance of the job

occurred in Florida, jurisdiction over AGS still cannot be established on this basis as AGS

was not a party to the Contract, oral or otherwise.  Even if it was, that fact alone would not

establish personal jurisdiction over AGS.  See Wallack v. Worldwide Mach. Sales, Inc., 278

---

[11]A passive web site, such as the Houston Chronicle here, does little more than make information available to those who are interested in it and is not grounds for the exercise of personal jurisdiction.  See Vax-D Med. Techs., LLC v. Allied Health Mgmt., Ltd., No. 8:04-cv-1617-T-26, 2006 WL 680659, *5 (M.D. Fla. 2006).

F. Supp. 2d 1358, 1366 (M.D. Fla. 2003) (providing that, the fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant).

Lastly, AGS is correct that Plaintiff's reliance on the email and telephone communications she had with Bassut and/or Stirling (who notably is not employed by AGS), apparently from or to a variety of locations within the United States, do not establish that the long-arm statute provides a basis for personal jurisdiction over AGS.  See Horizon Aggressive Growth, 421 F.3d at 1167 (making telephonic and electronic communications into Florida did not constitute "conducting business" in Florida) (citing Sculptchair, 94 F.3d at 628).

In sum, the collective activities of AGS do not demonstrate the conduct of or the carrying on of a business or business venture in the state for pecuniary benefit.  Nor do they demonstrate a "continuous and systematic general business contact" on the part of AGS in Florida such that jurisdiction over it would be proper pursuant to section 48.193(2).[12]  Thus, even if Plaintiff has made a prima facie showing of the court's jurisdiction, Defendant's proffered evidence sufficiently contests the matter of jurisdiction to shift the burden back to the Plaintiff to show the court's personal jurisdiction under Florida's long-arm statute. Because Plaintiff has failed to do so, I recommend that Defendant's motion to dismiss be granted.  See Venetian Salami, 554 So.2d at 502.

---

[12]The rationale for this conclusion about general jurisdiction is set forth below in the discussion concerning the failure to establish minimum contacts,

B.

Should the court disagree with the conclusion that the exercise of jurisdiction over AGS is not appropriate under the Florida long-arm statute, it must next determine whether sufficient minimum contacts exist between AGS and the forum state to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause.  For the following reasons, I find that Plaintiff has failed to show that AGS had sufficient contacts with Florida so that the maintenance of the suit against it here would comport with due process.

Due process requires the non-resident defendant to have sufficient minimum contacts with the forum state such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.  See Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945); U.S. Secs. & Exch. Comm'n v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997); Sculptchair, 94 F.3d at 626.  In this circuit, a three-part test is applied in deciding whether the minimum contacts requirement is met: (1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.  Posner, 178 F.3d at 1220.  In determining whether the exercise of jurisdiction would offend notions of fair play and substantial justice, the court should consider the burden on the defendant of defending the suit in Florida; Florida's interest in adjudicating the suit; the plaintiff's interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies.  Id. at 1221.

17

AGS contends it did not purposefully establish minimum contacts with Florida sufficient to satisfy the due process inquiry.  By its argument, Plaintiff's employment relationship with CSA, Ltd., and the agreements she executed in Kuwait with CSA, Ltd., and Combat Support Associates cannot satisfy due process concerns related to AGS.  By its account, its only connection therewith was its recruiting activities on behalf of CSA, Ltd., which were not purposely aimed at the State of Florida.  Given the nature of the recruitment of Plaintiff, the majority of the contacts AGS had with Plaintiff were at locations other than Florida and no one from AGS visited Florida at any time.  Further, the contemplated future consequences of Plaintiff's employment by CSA, Ltd., did not involve AGS at all and were not intended to occur in, or otherwise involve activity in, Florida.  Based upon these factors, AGS urges that there is no basis to conclude that its conduct in connection with Florida is such that it should have reasonably anticipated being haled into court.[13]  AGS also argues that considerations of fair play and substantial justice dictate that this court should not exercise jurisdiction over it.  AGS urges that its burden in defending this action in Florida far outweighs the convenience to Plaintiff in bringing suit in Florida, particularly since the factual basis for Plaintiff's claims occurred overseas.  In any event, AGS urges that fairness factors cannot provide the sole basis for exercising jurisdiction over it.  (Doc. 12).

In response, Plaintiff summarily asserts that the test for minimum contacts has been satisfied because her cause of action stems from the employment relationship which

---

[13]In support of its argument, AGS cites to Groome v. Feyh, 651 F. Supp. 249 (S.D. Fla. 1986); Stuart v. Spademan, 772 F.2d 1185 (5th Cir. 1985); Christus St. Joseph's Health Sys. v. Witt Biomedical Corp., 805 So.2d 1050 (Fla. Dist. Ct. App. 2002); and Voorhees v. Cilcorp, Inc., 837 F. Supp. 395 (M.D. Fla. 1993).

originated in Florida; AGS actively investigated, recruited, and communicated by electronic means with Florida residents; and AGS has no reasonable expectation that undertaking significant steps to investigate, recruit, and ultimately hire Florida employees to report to duty overseas protects its it from being haled into Florida courts.[14]  Plaintiff asserts further that fair play and substantial justice support the exercise of personal jurisdiction over AGS because if the court were to dismiss her action, "out of state employers would find comfort in recruiting Florida residents for duty overseas with[out] subjecting themselves to the laws of this State or indeed, the laws of any state according to Defendant's refrain that any alleged harm occurred over seas."  (Doc. 15 at 4).

The minimum contacts analysis is about the "quality and nature" of the defendant's activities and whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Cable/Home Commc'n, 902 F.2d at 858 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  A corporate defendant may be said to have purposefully directed its activity at the forum state if it can be established that the defendant engaged in continuous and systematic activity in the jurisdiction or if it has a corporate agent in the forum.  Int'l Shoe, 326 U.S. at 317.  However, where there is merely casual presence of a corporate agent or where the corporation merely engaged in a single or isolated activity and no cause of action relates to this activity, no personal jurisdiction can be exercised.  Id.  A defendant may not be haled into a jurisdiction as a result of mere "random," "fortuitous," or "attenuated" contacts.

_____

[14]In support of her argument, Plaintiff cites to Baker Elecs., Inc. v. Pentar Sys., Inc., 219 F. Supp. 2d 1260 (M.D. Fla. 2002).

See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 486 (1985).  However, "where the defendant 'deliberately' ha[s] engaged in significant activities within the State, . . . or ha[s] created 'continuing obligations' between himself and residents of the forum, . . . he manifestly . . . avail[s] himself of the privilege of conducting business there . . . [,]" and it is not unreasonable to require him to submit to litigation in that forum.  Id. at 476 (citations omitted).  When considering whether and to what extent a contract can constitute a "contact" for the purposes of due process analysis, courts should consider prior negotiations and contemplated future consequences, the terms of the contract, and the parties' actual course of dealing in determining whether the defendant purposefully established minimum contacts within the forum.  Id. at 478-79.

Initially, while AGS posted the employment ad, interviewed Plaintiff, and communicated with her regarding the position prior to her entering into the employment contracts with CSA, Ltd., and Combat Support Associates in Kuwait, its contacts with Florida are only tangentially related to the conduct complained of in the Amended Complaint.

Further, AGS's contacts with Florida do not constitute purposeful availment to the laws and privileges of the State of Florida such that it could reasonably anticipate being subject to suit in this forum.[15]  The undisputed facts demonstrate that AGS recruited for the position by placing an advertisement in the Houston Chronicle (both hard copy and online versions); responded to Plaintiff's email response to the posting; communicated with Plaintiff

---

[15]As above, the allegations in Plaintiff's Amended Complaint are inadequate to plead minimum contacts and it proffers little or no proof to counter the Defendant's due process challenge.

during an approximate one-month period by email, cell phone, and facsimile; and telephoned

a Florida resident listed as one of Plaintiff's references.[16]  As for the online posting, there is

no evidence that the job advertisement that AGS placed in a Texas newspaper was

purposefully directed at Florida or even that Plaintiff viewed the site in Florida.  In any event,

advertising employment opportunities in a forum state's newspaper and the sending of an

agent to the forum state to interview a person who responded to the ad has been found not a

"purposeful availment" so as to support personal jurisdiction over a defendant in a contract

action.  See Johnston, 802 F.2d at 420.  Additionally, passive web sites, i.e., those in which a

defendant simply posts information on an Internet web site that is accessible to users in

foreign jurisdictions, are not grounds for the exercise of personal jurisdiction.  See Instabook

Corp. v. Instantpublisher.com, 469 S. Supp. 2d 1120, 1124 (M.D. Fla. 2006) (quoting Zippo

Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)).  Although Plaintiff

claims that AGS has acknowledged its "own pattern and practice of advertising positions on a

world wide basis," neither the evidence of record nor the case law supports her claim.  As for

the communications AGS had with Plaintiff by way of Bassut and Jones (who telephoned

Plaintiff on one occasion to discuss her credit), there is no evidence that AGS purposefully

aimed these contacts toward Florida or that such contacts occurred in Florida.  It does appear

Bassut made a telephone call to a Florida reference, however, communications such as those,

standing alone, do not constitute sufficient contacts.  See Charia v. Cigarette Racing Team,

---

[16]The first contact AGS (via Bassut) had with Plaintiff was when she responded to the online advertisement on January 21, 2004.  (Doc. 12-3, ¶ 10).  Plaintiff arrived in Kuwait on February 25, 2004, and began working as the business manager for CSA, Ltd.  (Doc. 12-2, ¶ 21).

Inc., 583 F.2d 184, 187-88 (5th Cir. 1978) (holding that an exchange of communications

between a resident and a nonresident in developing a contract is insufficient of itself to be

characterized as purposeful activity invoking the benefits and protection of the forum state's

laws); Gulf Atlantic Transport Co. v. Offshore Tugs, Inc., 740 F. Supp. 823, 832 (M.D. Fla.

1990) (finding that non-resident defendants' alleged contacts in Florida, which included

telephoning plaintiff in Florida, sending telex messages, being parties to a contract which was

negotiated by telephone and allegedly accepted in Florida, sending daily reports to Florida

and contacting plaintiff by radio in Florida, did not amount to "minimum contacts"); Groome,

651 F. Supp. at 256 (telephone calls and mailings did not constitute sufficient contacts);

Stuart, 772 F.2d at 1193 (prior negotiations are generally insufficient standing alone to

amount to purposeful activity); see also Cauff Lippman & Co. v. Apogee Fin. Group, Inc.,

745 F. Supp. 678, 682 (S.D. Fla. 1990) (one meeting in Florida, negotiations, and other

communications insufficient to obtain personal jurisdiction).  In sum, the quality and nature of

these activities fail to demonstrate that AGS purposefully availed itself of the privilege of

conducting activities within Florida so as to invoke the benefits and protections of Florida

law.

   Even if AGS had purposefully established contact with the State of Florida, the facts

of this case fall short of those required to satisfy the standards for fair play and substantial

justice.  Importantly, and as conceded by Plaintiff, "all material events [giving rise to her

claims] occurred overseas," and Plaintiff is working in the Middle East.  These facts militate

against Plaintiff's interests in obtaining effective and convenient relief in her home state.  It

also makes it difficult to conclude that the state of Florida has a significant interest in

providing a convenient forum for the Kuwait-based claims brought by Plaintiff against a Texas based company.  Additionally, while the burden on AGS to defend this suit in Florida may not be so substantial as to effectuate a dismissal in this action, it would be burdensome nonetheless given its lack of business in this state.  Cf. Asahi Metals Indus. Co. v. Superior Court, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").  Given the lack of sufficient minimum contacts, the equities in these factors tend to favor the Defendant.

While not urged one way or another by the parties, it appears that the Florida courts would enjoy no greater interest in providing a forum for this suit against AGS than would the courts in Texas apart from the efficiency that might be achieved from joining all the claims and parties in a single venue.[17]  This factor would favor the Plaintiff pursuing the claim in this forum.

In the balance, I conclude that notions of fair play and substantial justice tend to favor AGS.  Accordingly, considerations of due process dictate that the court not assume personal jurisdiction over AGS in this suit.

---

[17]At arguments, defense counsel advised that they would continue to defend the claim against Research Analysis and Maintenance, Inc. in this court rather than seek a change of venue.

III.

For the foregoing reasons, it is RECOMMENDED that Defendant's **Motion to Dismiss** (Doc. 12) be GRANTED and that the claims asserted against AGS be dismissed.

Respectfully submitted on this
7th day of August 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>see</u> <u>also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Court Judge
Counsel of Record